## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| TIMKEN GEARS & SERVICES INC., | ) | Case No. 5:22-cv-02189 |
| | ) | |
| | ) | Judge J. Philip Calabrese |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Thomas M. Parker |
| v. | ) | |
| | ) | |
| JOSEPH WHITE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Timken Gears & Services Inc. filed suit in State court alleging that its former employee Defendant Joseph White breached a non-competition agreement. (ECF No. 1-1, ¶ 27, PageID #14.)  Plaintiff also alleged that Brad Foote Gear Works, Inc., Mr. White's current employer, hired him knowing of his post-employment restrictions and subsequently assisted him in soliciting Timken Gears' customers. (*Id.*, ¶¶ 40 & 41, PageID #16.)  Brad Foote Gear Works removed the case to federal court.  (ECF No. 1, PageID #1.)  On Plaintiff's motion, the Court dismissed Brad Foote Gear Works from the case on March 13, 2023.  (ECF No. 20.)  Mr. White moves to dismiss the case under Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure and to change venue under 28 U.S.C. § 1404.  (ECF No. 22; ECF No. 28.)  Plaintiff opposes.  (ECF No. 29.)  For the reasons that follow, the Court **GRANTS** Defendant's motion to transfer and **DENIES WITHOUT PREJUDICE** the balance of Defendant's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Taking the facts alleged in the complaint as true and construing them in Plaintiff's favor, Plaintiff bases its claims on the following facts.

Plaintiff Timken Gears & Services Inc., a wholly owned subsidiary of the Timken Company doing business as Philadelphia Gear, hired Defendant Joseph White in November 2014.  (ECF No. 1-1, ¶¶ 4 & 8, PageID #11; *see also id.*, PageID #20–21.)  Timken hired Mr. White as a territory account specialist responsible for all or portions of the States of Indiana, Illinois, Kentucky, and Ohio.  (*Id.*, PageID #20; ECF No. 29-1, ¶ 3, PageID #223.)   In 2019, Timken added Northwest Ohio to Mr. White's territories.  (ECF No. 29-1, ¶ 9, PageID #224.)

Mr. White signed an offer letter dated November 14, 2014 that included a covenant not to compete for one year following his separation from employment.  It provides:

> [I]f, for any reason you leave the employ of the Company, you agree, for a period of no less than one year, from the date of your departure, to not work for, directly or indirectly, any competitor of the Company, nor to solicit for employment any current or former Company employees.  For purposes of this paragraph, a competitor of the Company is any company whose business includes, in whole or in part, a business model that is focused on industrial, aftermarket, end-user gear supply for gear repair.

(ECF No. 1-1, PageID #21.)  The offer letter does not include choice of law or choice of forum provisions.

Timken Central Regional Sales Manager Steve Patton declares that during Mr. White's employment at Timken, he "was responsible for developing, managing, and servicing client accounts and making sales calls to target customers" in Indiana, Kentucky, Ohio, and Illinois.  (ECF No. 29-1, ¶¶ 3 & 4, PageID #223.)

2

In April 2018, Mr. White signed a nondisclosure and assignment agreement, which Timken refers to as a confidentiality agreement. (ECF No. 29, PageID #205–06; ECF No. 29-2, PageID #228–31.) That agreement, which is not attached to or formally incorporated into the complaint, included additional restrictive covenants concerning Mr. White's use of trade secrets he learned during his employment with Timken. It also included the following choice of law and venue provision:

> **Applicable Law and Venue.** The Defend Trade Secrets Act will control all aspects of trade secrets and confidential information. Otherwise, this agreement will be governed by and construed in accordance with the laws of the State of Ohio without regard to its choice of law rules. Any dispute relating to this Agreement will be resolved by the State and federal courts serving Stark County, Ohio, and I submit to the jurisdiction of those courts.

(*Id.*, ¶ 13, PageID #230.)

On or about February 4, 2020, Timken fired Mr. White for violating company policy. (ECF No. 1-1, ¶ 17, PageID #13.) Mr. White filed suit to challenge his termination, and that case is currently pending in the Northern District of Illinois. *White v. Timken Gears & Servs., Inc.*, No. 1:21-cv-02290 (N.D. Ill.). Shortly after Timken terminated Mr. White, he secured a position with Brad Foote Gear Works as a sales/field service engineer. (ECF No. 1-1, ¶¶ 18–20, PageID #13.) Mr. White represents that he performs field service repairs and is a blue-collar laborer, not a salesperson. Brad Foote Gear Works is a direct competitor of Timken in the business of manufacturing and selling gears and gearboxes. (*Id.*)

Plaintiff alleges that during Mr. White's employment with Brad Foote Gear Works he has taken business from Timken customers, including Kentucky Utilities, Continental Tire, and Duke Gibson. (*Id.*, ¶ 23, PageID #14; ECF No. 29-1, ¶ 11,

3

PageID #224–25.)  Specifically, Patton declares that Kentucky Utilities and Duke Gibson each sent repair projects to Brad Foote Gear Works instead of Timken, which amounts to several hundred thousand dollars of business lost to Timken.  (*Id.*)  Kentucky Utilities and Duke Gibson are not among the Ohio companies Mr. White serviced during his time with Timken.  (*Id.*, ¶ 10, PageID #224.)  At the status conference, Mr. White indicated that at least one of these companies operates 30 miles down the road from his home in Indiana.

Plaintiff asserts two claims against Mr. White for breach of contract (Count I) and tortious interference with business relations (Count II).  (ECF No. 1-1, PageID #14–16.)  At the case management conference on June 7, 2023 and at the status conference on August 8, 2023, Defendant Joseph White, proceeding *pro se*, made an oral motion to dismiss the case.  (ECF No. 22; ECF No. 28.)  The Court construes Defendant's motion as follows.  Under Rule 12(b)(3) and 28 U.S.C. § 1404, Defendant moves to dismiss the case for improper venue or, in the alternative, to transfer the case to the Northern District of Indiana, the District within which he lives , or to the Northern District of Illinois, where there is litigation pending between the parties concerning Mr. White's termination.  Defendant also moves to dismiss the case for lack of personal jurisdiction under Rule 12(b)(2).  Finally, Defendant moves to dismiss for failure to state a claim under Rule 12(b)(6).

## ANALYSIS

In the interest of judicial economy, the Court finds it appropriate to consider Defendant's motion to transfer first.  *See Smith v. General Info. Sols., Inc.*, No. 2:18-

cv-230, 2018 WL 4019463, at *2 (S.D. Ohio 2019) (addressing transfer under 28 U.S.C. § 1404 before other pending motions to dismiss).  Defendant seeks to transfer this case under Section 1404 to the Northern District of Indiana or the Northern District of Illinois.  Plaintiff opposes, arguing that the confidentiality agreement Mr. White signed includes an enforceable Ohio choice-of-forum provision and the Northern District of Ohio is otherwise a convenient venue.  (ECF No. 29, PageID #214–17; ECF No. 29-2, PageID #230.)

Section 1404 allows for a change in venue, even if venue is proper in the court where the case is filed.  Subsection (a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought *or* to any district or division to which all parties have consented."  28 U.S.C. § 1404(a) (emphasis added).  The party requesting transfer "bears the burden of proof to show the factors weigh 'strongly' in favor of transfer."  *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998).

## I.    Consent

Defendant argues that this case should remain in the Northern District of Ohio under Section 1404(a)'s second clause because the parties consented to litigation here under the forum selection clause in the Confidentiality Agreement.  (ECF No. 29, PageID #214–15.)  The confidentiality agreement includes a forum-selection clause, which manifests consent under Section 1404(a).  *See Mahan v. Core Values Roadside Serv.*, LLC, No. 1:19-cv-480 (WOB), 2020 WL 1291589, at *2 (S.D. Ohio Mar. 18, 2020).  Specifically, it requires that disputes regarding the confidentiality agreement

5

be resolved "by the State and federal courts serving Stark County, Ohio," and that its signatory, Mr. White, "submits to the jurisdiction of those courts." (ECF No. 29-2, ¶ 13, PageID #230.)  Plaintiff intends to seek leave to amend the complaint to add claims concerning the confidentiality agreement.  (ECF No. 29, PageID #206 n.5.)  Defendant does not contest the validity of the confidentiality agreement or its forum-selection clause, but as pled Plaintiff's claims do not arise under it.

In considering the public and private interest factors, a forum-selection clause in an agreement between the parties weighs heavily.  "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine Const. Co, Inc. v. United States Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).  "Only under extraordinary circumstances *unrelated to the convenience of the parties*" should transfer not occur. *Id.*  But this "analysis [only] comes into play once a court has determined that there is an enforceable forum-selection clause" in the first place. *VSAT Sys., LLC v. Intelsat US LLC*, No. 5:20-cv-41, 2020 WL 435459, at *2 (N.D. Ohio Jan. 28, 2020) (citing *North v. McNamara*, 47 F. Supp. 3d 635, 646–48 (S.D. Ohio 2014)).  Under the law of this Circuit, courts should enforce a forum-selection clause "absent a strong showing that it should be set aside." *Id.* (quoting *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009)).

As the case stands today in its current procedural posture, Plaintiff's claims do not rest on the confidentiality agreement.  Instead, Plaintiff alleges a tort claim and that Mr. White breached his employment agreement, which did not contain a choice

6

of law or choice of forum provision. (ECF No. 1-1, PageID #20–21.) Timken chose to file suit without a claim based on the confidentiality agreement. In the months since, it did not amend as of right and has not yet sought leave to amend. In opposition to Defendant's motion, Plaintiff argues that because the complaint refers to Mr. White's "access and use of Timken Gears' proprietary, confidential information and trade secrets," it "places the terms of the Confidentiality Agreement at issue." (ECF No. 29, PageID #211.) But the claims Timken asserts in the complaint do not arise under the confidentiality agreement. Nor did Timken place the confidentiality agreement at issue. It attached Mr. White's employment agreement to the complaint. It could have easily attached and incorporated the confidentiality agreement, which Mr. White executed several years ago, but it chose not to do so. This litigation conduct amounts to an admission that the causes of action Timken asserts do not place at issue or relate to the confidentiality agreement. At this stage of the proceedings, an amended complaint to invoke the forum-selection clause in the confidentiality agreement would amount to nothing more than naked forum-shopping as a further point of leverage for Timken to defend against Mr. White's employment claim in Illinois.

For these reasons, on this record the forum-selection clause in the confidentiality agreement carries less weight than it otherwise might. However, it remains one of the private-interest factors the Court will consider in ruling on Plaintiff's motion to transfer, and it favors Ohio.

## II.    Analysis of Factors for a Change of Venue

When "ruling on a motion to transfer," a district court should consider "the private interests of the parties, including their convenience and the convenience of

potential witnesses, public-interest concerns, as well as whether the transfer is in the interests of justice." *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019) (citing *Moses v. Business Card Express, Inc.*, 989 F.2d 1131, 1137 (6th Cir. 1991)).

District courts balance multiple often-competing factors when weighing a motion to transfer venue: the convenience for witnesses, the location of operative facts, the ability to compel unwilling witnesses, the interests of justice, the ease of accessing sources of proof, convenience of the parties, and the plaintiff's choice of forum. *See Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 651 (6th Cir. 2016) (declining to reverse the district court's venue decision based on those factors). In weighing the private- and public-interest factors, "if a change of venue serves merely to shift the inconvenience from one party to another, a change of venue is generally not warranted." *Siegfried v. Takeda Pharms. N. Am., Inc.*, No. 1:10-cv-02713, 2011 WL 1430333, at *2 (N.D. Ohio Apr. 14, 2011) (citations omitted).

### II.A. Private-Interest Factors

*Plaintiff's Choice of Forum.* Plaintiff, a wholly owned subsidiary of an Ohio company, chose to sue Mr. White in its home State. (ECF No. 1-1.) Typically, courts "give[] great deference to a plaintiff's choice of forum" and do not disturb it "unless the movant makes a strong showing that equity favors the requested transfer." *DISC Env't Servs., Inc. v. Usher Oil Co.*, 343 F. Supp. 3d 705, 709 (N.D. Ohio 2018) (cleaned up). Where plaintiffs sue in their home forum, their choice of forum deserves "great deference." *See Picker Int'l*, 35 F. Supp. 2d at 573 (concluding that because the plaintiff chose to litigate "in its home state of Ohio . . . that choice is given much

deference").  Recently, the Court "gave significant weight" to plaintiffs' choice of forum where seven of the ten plaintiffs were Ohio residents.  *Smith v. Swaffer*, 566 F. Supp. 3d 791, 801 (N.D. Ohio 2021).  For these reasons, this factor favors Ohio.

*Operative Facts and Sources of Proof*.  Plaintiff argues that most of the relevant documentary evidence is either in Ohio or electronically accessible from Ohio.  (ECF No. 29, PageID #215–16.)  However, none of Mr. White's allegedly unlawful behavior occurred in Ohio.  Plaintiff alleges he breached the restrictive covenant contained in his employment agreement when he took a job at Brad Foote Gear Works.  Brad Foote is an Illinois company.  (ECF No. 1-1, ¶ 6, PageID #11.)  Mr. White resides in Indiana.  (*Id.*, ¶ 5, PageID #11.)  And the two companies Patton specifically identifies as customers involved in Mr. White's alleged unlawful activity, Kentucky Utility and Duke Gibson, are not located in Ohio.  At least one appears to be located in Indiana.

Certainly, documentary evidence concerning Mr. White's employment with Timken and Timken's sales information are located at its headquarters in Ohio.  However, substantial evidence concerning Mr. White's alleged activity will be in Indiana, where he is located and where he allegedly engaged in some of that activity.  And documentary evidence within Plaintiff's control is almost certainly available electronically in other Districts.  For these reasons, the Court finds that this factor favors transfer to Indiana.

*Witnesses*.  Plaintiff argues that because the parties and witnesses are scattered across several states, this factor does not favor Illinois over Ohio.  (ECF No. 29, PageID #215–16.)  Convenience for witnesses is "probably the single most

important factor in transfer analysis." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)).  "Convenience to witnesses is not a numbers game; a court should not merely tally witnesses but should instead evaluate the significance of their expected testimony." *Siegfried*, 2011 WL 1430333, at *3 (holding that the location of witnesses of "central relevance" to the dispute weighed in favor of transfer).

Neither party identifies specific fact witnesses whose testimony will be necessary to resolve this case.  However, similarly to the operative facts and sources of proof, the third-party witnesses in this matter are likely located outside Ohio, including in Indiana.  Specifically, the customers with whom Mr. White is allegedly doing business on behalf of Brad Foote are located in several States outside Ohio, including Indiana.  Further, Brad Foote is not currently a party, but its employees and representatives will almost certainly be necessary witnesses.  For these reasons, this factor favors Indiana and Illinois over Ohio.

*Convenience of the Parties.*  Defendant contends that litigating this case in Ohio will cause him inconvenience because he lives in Indiana.  Plaintiff argues that Illinois would be no more convenient a forum for either party, as neither party is located there and transfer is inappropriate where it would merely shift the inconvenience between parties and/or witnesses.  (ECF No. 29, PageID #216.)  "[I]f a change of venue serves merely to shift the inconvenience from one party to another, a change of venue is generally not warranted." *Hanlon v. Takeda Pharm. N. Am.,*

10

*Inc.*, No. 10-02713, 2011 U.S. Dist. LEXIS 42122, at \*4 (N.D. Ohio Apr. 14, 2011) (citations omitted).

Here, the imbalance of resources between Plaintiff and Defendant is relevant. *Cf. Alltech, Inc. v. Carter*, No. 5:08-CV-325, 2009 WL 10710822, at \*4 (E.D. Ky. Feb. 9, 2009) (acknowledging the economic unbalance between the parties but finding in that case that "travel between the Eastern District of Missouri and the Eastern District of Kentucky should not be a significant burden for either party, as both are allegedly engaged in business operations around the world"). Defendant is a *pro se* litigant and describes himself as a blue-collar laborer who is domiciled in Indiana. Plaintiff alleges that Defendant performs services for Brad Foote in territories "that overlap the territories for which he performed work" for Timken. (ECF No. 29, PageID #205; ECF No. 1-1, ¶ 21, PageID #13.) However, on this record there is no evidence that he continues to perform work in Ohio, let alone nationally or internationally like the defendant in *Alltech*.

Plaintiff is domiciled in Ohio. However, Timken is a national company that operates in Ohio, Indiana, and Illinois. The same law firm, albeit through different offices, represents Timken in this matter and in Mr. White's lawsuit in the Northern District of Illinois. Defendant drove six hours to attend the initial case management conference in person. And at the status conference Timken represented that it does business in the other relevant Districts. On this record, the Court acknowledges the disparity between the parties and concludes that this factor favors transfer to Indiana.

11

## II.B.  Public-Interest Factors

*Judicial Economy and Familiarity with Governing Law.*  Neither party presents evidence that any relevant District—the Northern District of Ohio, Northern District of Illinois, or Northern District of Indiana—has a significantly higher or lower caseload than any other.  The Court recognizes that Ohio law likely governs Plaintiff's claims and will govern any claims Plaintiff brings arising out of the confidentiality agreement because it includes a choice of law provision.  A transferee court outside Ohio will be less familiar with the governing law, a consideration that favors venue in Ohio.

There is litigation pending between the parties in the Northern District of Illinois.  Plaintiff argues this is a "wholly insufficient" reason to transfer the case. (ECF No. 29, PageID #217.)  However, at the initial case management conference in this matter, counsel indicated that when Plaintiff filed its motion to stay the case in February 2023 its intention was to engage in a global resolution of this case and Mr. White's lawsuit in Illinois.  (ECF No. 14, PageID #150.)  The Court agrees that global resolution of this matter would be preferable, and it would be more efficient. For this reason, the Court finds that judicial economy favors transfer to Illinois while recognizing that the parties have it within their power to achieve a global resolution regardless of where each case is pending.

*Interests of Justice.*  Any number of things can lead the interests of justice to weigh in favor of or against transfer.  *See, e.g.*, *Berg Corp. v. Norris Mfg., LLC*, No. 5:20-cv-100, No. 5:20-cv-2297, 2021 WL 915895, at *4 (N.D. Ohio Mar. 10, 2021)

12

(holding that the interests of justice weighed against a second transfer of the same lawsuit).

Here, the Court finds that the interests of justice strongly favor transfer.  The record suggests that Plaintiff filed this lawsuit, at least in part, as leverage to resolve Defendant's employment suit.  Brad Foote timely filed a motion to dismiss or transfer this case to the Northern District of Illinois.  (ECF No. 9.)  On the deadline to oppose the motion, Plaintiff instead filed a motion to stay.  (ECF No. 14.)  The Court denied that motion and ordered Plaintiff to respond to Brad Foote's motion to dismiss or stay.  (ECF No. 15.)  Then, again on the date of Plaintiff's deadline to oppose Brad Foote's motion, Plaintiff instead voluntarily dismissed Brad Foote in favor of pursuing litigation against only Mr. White.  (ECF No. 19.)  And now, Plaintiff intends to amend to add Brad Foote back into this case, which will again raise the questions of venue and personal jurisdiction that Brad Foote asserted in its motion to dismiss or transfer long ago.  This procedural fencing is inefficient and weighs in favor of transfer to either Illinois or Indiana, where Mr. White and Brad Foote are allegedly engaged in unlawful conduct.

Generally, there is a public interest in having localized interests decided at home.  Plaintiff cites the Court's decision in *Signify North America Corp. v. Menard, Inc.*, No. 1: 22-cv-01447, 2022 U.S. Dist LEXIS 224724, at *17 (N.D. Ohio Dec. 9, 2022) (quoting *In re TS Tech,* 551 F.3d 315, 1321 (Fed. Cir. 2008)), to argue that where a plaintiff's claims arise out of the sale of goods in many states, including the transferee district, the citizens of the transferee district "have no more or less of a meaningful

13

connection to the case than any other venue." However, that case involved a corporate defendant's sale of goods in at least fourteen States. Mr. White is one individual who works in a handful of States. On this record, Ohio does not appear to be one of those States. For these reasons, the interests of justice favor transfer.

## CONCLUSION

Considering all the factors and the entirety of the record, Plaintiff's choice of forum weighs strongly in favor of Ohio, and the choice-of-forum clause in the confidentiality agreement favors Ohio as well. On this record, however, the choice of forum carries less weight than in other cases. Witness and fact-based considerations weigh in favor of Indiana and Illinois. The public interest factors weigh in favor of Indiana and Illinois.

For the foregoing reasons, the Court **GRANTS** Defendant's oral motion to transfer and **ORDERS** the Clerk to **TRANSFER** this action to the Northern District of Indiana.

**SO ORDERED.**

Dated: August 28, 2023

_____
        J. Philip Calabrese
        United States District Judge
        Northern District of Ohio